# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAKYM DURHAM | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  20-3944 |
| | : | |
| CITY OF PHILADELPHIA, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                          **November 25, 2020**

Philadelphia Police arrested a disabled man driving a vehicle designed for handicapped persons.  The officers placed his wheelchair in the police vehicle to transport him to the police station for questioning and processing.  John Doe police officers ordered him to stand up at the police station for his photograph.  He could not do so.  The John Doe officers then forcibly lifted him to make him stand.  They then let go of him causing him to fall on the floor and fracture his leg.  The John Doe officers then did not provide him medical care while in custody although one of his leg bones poked and pressed against his skin.  The officers released him two days later.  He sought medical treatment and learned of the leg fracture.

The man now sues the John Doe officers for excessive force, failure to intervene, and assault and battery.  He sues the City of Philadelphia for municipal liability. The City moves to dismiss.  He does not allege facts allowing us to find the City has a custom or practice of disregarding handicapped persons' needs upon arrest or during intake at police stations.  He does not allege a subsequent cover up or the John Doe officers' history of similar conduct.  He does not plead a causal connection with a City policy or custom.  He does not plead the City failed to train its police officers on this type of incident under a either a pattern of violations or a single violation theory.  We grant the City's motion to dismiss without prejudice to the handicapped

man possibly pleading facts necessary to proceed against the City on a municipal liability consistent with his obligations under Fed. R. Civ. P. 11.

## I.      Alleged facts

Philadelphia Police officers arrested Rakym Durham after observing him operating a vehicle specifically designed for handicapped persons.  When they arrested him, they placed his wheelchair into their police vehicle before transporting him to the police station.[1]  When they arrived at the police station, the officers ordered Mr. Durham to stand so they could take his photograph.[2]  When he could not comply, they forcibly lifted him from his wheelchair to try and make him stand.[3]  They then let go of Mr. Durham, causing him to fall onto the floor and causing his leg to fracture.[4]  Mr. Durham did not receive medical attention after falling even though "one of his leg bones [was] poking and pressing against his skin."[5]  The Philadelphia Police released Mr. Durham two days later without charging him.[6]   Lankenau Hospital physicians later diagnosed Mr. Durham with a "nondisplaced tibial plateau fracture," which he contends resulted from "being dropped to the ground."[7]

## II.      Analysis[8]

Mr. Durham sued the City and John Doe officers.  Mr. Durham asserts claims against the John Doe Officers for excessive force, failure to intervene, and assault and battery.[9]  He seeks to impose supervisory liability upon the City under 42 U.S.C. §1983 and *Monell v. New York City Department of Social Services*, alleging the City maintained a custom/policy of:  (1) "cover[ing] up and avoid[ing] detection of improper and illegal police activity, including excessive force, conspiracies, unlawful detention, failure to intervene against Officer's [sic] illegal conduct, false imprisonment, and assault and battery"; and (2) faili[ing] to sufficiently supervise against, train, and/or re-train against, and sufficiently discipline against illegal police activity, including but not

limited to excessive force, unlawful detention, failure to intervene against other Officer's [sic] illegal conduct, false imprisonment, false arrest, and assault and battery."[10]

The City moves to dismiss Mr. Durham's *Monell claim,* arguing he asserts "only conclusory statements about the City's alleged policy, practice or custom, with no supporting factual allegations."[11] Mr. Durham argues he alleged a cognizable claim of municipal liability because he included John Doe Officers, and discovery may reveal potential earlier misconduct during their employment.[12]

### A.    Mr. Durham does not plead the City had a custom or policy of covering up or avoiding detection for police misconduct.

Mr. Durham does not plead a *Monell* claim based on the alleged custom or policy of covering up or avoiding detection for police misconduct.

To plead municipal liability under *Monell*, Mr. Durham must allege:  "(1) [he] possessed a constitutional right of which he was deprived; (2) the municipality had a policy  [or custom]; (3) the policy [or custom] amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation."[13]   A municipality's policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by" the governing body's officers.[14] A custom is a practice "not formally approved by an appropriate decision maker" but "so widespread as to have the force of law."[15]

Mr. Durham does not allege facts showing a member of the City Police Department "cover[ed] up" or "avoid[ed] detection" for police misconduct.  He falls far short of alleging a "policy" or "custom."  Even if Mr. Durham pleaded a municipal policy or custom of covering up misconduct, he fail to plead this policy was the "moving force" behind the alleged constitutional violations.   Mr. Durham instead conclusorily alleges officers physically mishandled him, resulting in a serious injury.  He does not allege a subsequent cover up exacerbated his injuries,

nor does he allege the John Doe officers had a history of similar conduct, which the City sought to cover up.  Simply put, Mr. Durham does not draw a causal connection between the harm he suffered and the alleged municipal policy or custom. He pleads no facts from which we cause plausibly infer the City had a custom or policy of covering up or avoiding detection of police misconduct.

**B.      Mr. Durham does not plead the City failed to train its police officers.**

Mr. Durham also does not adequately plead a failure to train theory under *Monell*.

"A municipality's failure to adequately train its employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, and is 'closely related to the ultimate injury.'"[16]   While "[g]enerally, deficient training can only amount to . . . deliberate indifference 'where the failure to train has caused a pattern of violations,'" our Court of Appeals recognizes an exception to this rule in the single-violation theory. [17] Under the single-violation theory, Mr. Durham may state a *Monell* claim absent a pattern of violations if he can plead:  (1) the violation of his federal rights was a "highly predictable consequence of a failure [to] train officers"; and (2) "the likelihood of recurrence and predictability of the violation" justifies finding "[the] policymakers' decision not to train an officer reflected 'deliberate indifference to the obvious consequence of the policymakers' choice.'"[18]  Mr. Durham cannot state a claim by "[m]erely alleging . . .  a single injury 'could have been avoided if an employee . . . had better or more training.'"[19]  To prevail under a single-violation theory, Mr. Durham must instead "show that the need for the [City] to provide specific training in order to avoid constitutional injury was "highly predictable" or "patently obvious.'"[20]

Mr. Durham fails to allege a "failure to train" *Monell* claim under either a pattern-of-violations theory or under a single-violation theory.

1.      **Mr. Durham does not adequately plead a pattern-of-violations theory.**

Mr. Durham does not allege a pattern of violations. His "[c]omplaint is devoid of any reference to any other occasion where a" Philadelphia Police officer engaged in similar misconduct, and "[t]he paragraph alleging deficient training mentions no other person or persons whose rights were violated because of [the officers'] deficient training."[21]  Because "[t]he facts pled describe a single incident," (the officers forcing Mr. Durham to stand and then fall), Mr. Durham's present conclusory allegations are "by definition insufficient . . . to state a 'failure to train' *Monell* claim under a 'pattern-of-violations'" theory.[22]

2.      **Mr. Durham does not adequately plead a single-violation theory.**

Mr. Durham does not adequately plead a *Monell* claim under a single-violation theory because he does not "identify a failure to provide *specific training* that has a causal nexus with [his] injuries."[23]

To state a *Monell* claim under a single-violation theory, Mr. Durham must plead "the failure to train 'proximately caused his constitutional injury by identifying a particular failure in a training program that is 'closely related to the ultimate injury.'"[24]  Whether we may hold the City liable under a single-violations theory "depends on 'the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"[25]  As Mr. Durham does not allege a "particular" or "specific" failure in the training program with a causal nexus to his injuries, he fails to plead a *Monell* claim under a single-violation theory.

A general averment of a municipality's "failure to offer some unspecified training or supervision" is insufficient to plead a *Monell* claim.[26]  In *Tucker v. Petruzzi*, a police officer forcibly opened the door to the Mr. Tucker's home, entered his home, struck him, threw him

onto the couch, handcuffed him, dragged him outside, and knocked him down onto the concrete.[27]  Mr. Tucker sued the officer as well as municipal defendants, asserting in a summary fashion the municipal defendants' supervisory liability under *Monell* for failing to train the officer "in the proper use, and limits, or police authority and force, including de-escalation and alternatives to physical force."[28]   Magistrate Judge Carlson recommended the district court dismiss this conclusory allegation as lacking the specificity to state a single-violation *Monell* claim,[29] and Judge Mariani adopted this report and recommendation in full.[30]

By contrast, a civil rights plaintiff suing under *Monell* may defeat a municipality's motion to dismiss by specifically alleging the type of training the municipality failed to provide and the predictability of the consequences of this failure.  In *Kane v. Chester County Department of Children, Youth, and Families*, an employee of the Children's Home of Reading Youth and Family Services, Inc. received a report from a foster mother of an incident involving inappropriate sexual behavior between children in the foster home.[31]  The employee reported the incident to a  Chester County caseworker, who noted the report in the victim's file for her supervisor to review.[32]  The caseworker and the employee decided to monitor the situation, but did not alert the court, the victim's guardian ad litem, or the psychologist who later performed a psychological evaluation on the victim.[33] The victim's guardian ad litem alleged the caseworker had several opportunities to alert the authorities.  The sexually inappropriate conduct in the home escalated until the caseworker reported an incident to the court a year later, marking the first time the guardian ad litem or the court became aware of the situation and had the victim removed from the foster home.[34]

The guardian ad litem brought a *Monell* claim against the municipality, alleging it "failed to properly train and apprise their respective employees as to the employees' duty to report to

guardians ad litem and to the court on a timely basis and failed to provide caseworkers and supervisors with the necessary training for supervising and assisting children who experience inappropriate sexual conduct."[35] Judge Gardner held the guardian ad litem adequately pleaded a failure to train claim because "occasions for caseworkers to deal with instances of sexual conduct are likely to recur in the caseworkers' duties, perhaps even with sufficient frequency to create a need for the county to provide specific training on the duties to report sexual misconduct to guardians ad litem and to the court on a timely basis and to create a need for specific training on supervising children who experience inappropriate sexual conduct and the necessity to obtain appropriate help on a timely basis."[36]

We do not have the benefit of this level of specific facts. Mr. Durham broadly alleges, "[i]t was the policy and/or custom of the City of Philadelphia to fail to sufficiently supervise against, train, and/or re-train against, and sufficiently discipline against illegal police activity, including but not limited to excessive force, unlawful detention, failure to intervene against other Officers' illegal conduct, false imprisonment, false arrest, and assault and battery."[37]  Like the allegations in *Tucker*, Mr. Durham's allegation lacks the type of specificity required to state a single-violation failure to train claim.   Unlike in *Kane*, where the alleged lack of training tied in specifically to the allegations of harm suffered, the alleged lack of training here is not tailored to the harm Mr. Durham suffered.  Mr. Durham does not allege, for example, the City failed to properly train its officers on how to safely transport, arrest, and/or process wheelchair-bound, immobile, or otherwise physically disabled individuals.  Nor does he allege the City failed to properly train its officers on the importance of rendering aid or providing medical attention if a disabled individual is injured during intake.  Unlike in *Kane*, Mr. Durham does not allege the John Doe officers interact with physically disabled individuals with sufficient frequency to create

a need for the City to create a specific training program to handle these situations appropriately. He fails to plead facts which may allow us to plausibly infer municipal liability under *Monell.*

## III.    Conclusion

We dismiss Mr. Durham's claims against the City of Philadelphia without prejudice to his ability to timely amend his claims under our accompanying Order consistent with Federal Rule of Civil Procedure 11.[38]

---

[1] ECF Doc. No. 1 ¶¶ 9-10.

[2] *Id.* ¶ 13.

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶¶ 14-15

[6] *Id.*

[7] *Id.* ¶ 15.

[8] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[9] ECF Doc. No. 1 ¶¶ 22-23, 26, 32.

[10] *Id.* ¶¶ 33-34.

[11] ECF Doc. No. 4 at 5.

[12] ECF Doc. No. 5 at 4-5.

[13] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015)

[14] *Monell v. Dept. of Soc. Serv. of City of New York*,  436 U.S. at 658, 690 (1978).

[15] *Board of Cnty. Comm'rs of Bryan Cnty., Okl. V. Brown*, 520 U.S. 397, 404 (1997).

[16] *Kane v. Chester Cnty. Dept. of Children, Youth, and Families*, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (quoting *Kline ex rel. Ardnt v. Mansfield*, 255 Fed. App'x 624, 629 (3d Cir. 2007)).

[17] *Id.* (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)).

[18] *Id.* (quoting *Kline*, 255 Fed. App'x at 629).

[19] *Id.* at 689 (quoting *Connick v. Thompson*, 563 U.S. 51, 66 (2011)).

[20] *Id.* (quoting *Connick*, 563 U.S. at 74).

[21] *Id.*

[22] *Id.*

[23] *Tucker v. Petruzzi*, No. 17-1848, 2018 WL 3623766, at *6 (M.D. Pa. June 27, 2018) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)).

[24] *Id.* at *7 (quoting *Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015)).

[25] *Id.* (quoting *Thomas v. Cumberland Cnty.*, 749 F. 3d 217, 223-24 (3d Cir. 1999)).

[26] *Id.*

[27] *Id.* at *1.

[28] *Id.* at *7.

[29] *Id.* at *7-8.

[30] *Tucker v. Petruzzi*, No. 17-1848, 2018 WL 3622772 (M.D. Pa. July 30, 2018).

[31] 10 F. Supp. 3d at 682.

[32] *Id.*

[33] *Id.* at 682-84.

[34] *Id.*

[35] *Id.* at 689.

[36] *Id.* at 690.

[37] ECF Doc. No. 1 at ¶ 35.

[38] We recognize our dismissal of the City of Philadelphia could make it difficult for Mr. Durham to discover the identity of, and serve, the Officer John Doe defendants if he cannot plead the City's municipal liability in an amended complaint. If so, and in the interest of justice and upon a showing of unsuccessful efforts to confirm their identity through public records, Mr. Durham's counsel may move to direct service upon the John Doe officers through the City of Philadelphia Police Department and we may direct the City to identify the officers who arrested and processed him on August 15, 2019 as soon as possible. When Mr. Durham learns the identity of the John Doe officers, he must apply to this court for an order granting leave to amend to identify the officers involving in the arrest or conduct at the police station. *Stevenson v. Unknown Correctional Officers*, No. 17-198, 2017 WL 2789045 at *2 (D.Del. June 26, 2017) (recognizing dismissal of the police department would make service of the John Doe defendants difficult and thus ordering service on the police department and ordering the police department to identify the John Doe officers); *Watson v. Wilmington Police Dep't.*, No. 07–344, 2007 WL 4572959 (D. Del. Dec. 20, 2007) (recognizing dismissal of the police department would make service of the John Doe defendants difficult and thus ordering service on the police department and ordering the police department to identify the John Doe officers); *Borges v. Administrator for Strong Memorial Hosp.,* No. 99–6351, 2002 WL 31194558, at *1 n. 1 (W.D.N.Y. Sept.30, 2002) (recognizing dismissal of a named administrator would make it difficult to identify John and Jane Doe defendants and entering a similar order); *Searcy v. Dallas Police Dep't,* No. 01–0687, 2001 WL 611169 (N.D. Tx. May 31, 200l) (action against two John Doe City of Dallas police officers claiming excessive force and Magistrate Judge ordered service completed on the John Doe officer defendants through the City of Dallas Police Department). Mr. Durham can also plead the City's municipal liability and then pursue the identities of the John Doe officers in discovery and move for leave to amend once identified.